## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION (COLUMBUS)

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE<br>30 N. Raymond, Third Floor<br>Pasadena, CA  91103 | : | CASE NO. 2:25-cv-00789 |
| | : | (Judge_____) |
| Plaintiff, | : | |
| v. | : | **COMPLAINT FOR<br>DECLARATORY AND<br><u>INJUNCTIVE RELIEF</u>** |
| CANDY S. RUSSELL, in her official capacity as Clerk of the Athens County Court of Common Pleas,<br>Athens County Clerk of Courts<br>1 S. Court Street, 4th Floor<br>Athens, OH  45701 | : | |
| | : | |
| | : | |
| and | : | |
| | : | |
| SHAWN PEEPLES, in his official capacity as Clerk of the Miami County Court of Common Pleas,<br>Miami County Clerk of Courts<br>Third Floor Safety Building<br>201 W. Main Street<br>Troy, OH  45373 | : | |
| | : | |
| | : | |
| and | : | |
| | : | |
| BREIGHTON SMITH, in his official capacity as Clerk of the Warren County Court of Common Pleas,<br>Warren County Clerk of Courts<br>500 Justice Dr.<br>Lebanon, OH  45036 | : | |
| | : | |
| | : | |
| Defendants. | : | |

Plaintiff Courthouse News Service ("Courthouse News"), by and through its undersigned counsel, alleges the following in support of its Complaint for Declaratory and Injunctive Relief against Defendants Candy S. Russell ("Russell"), in her official capacity as

Clerk of the Athens County Court of Common Pleas ("ACCCP"), Shawn Peeples ("Peeples"), in his official capacity as Clerk of the Miami County Court of Common Pleas ("MCCCP"), and Breighton Smith ("Smith"), in his official capacity as Clerk of the Warren County Court of Common Pleas ("WCCCP") (collectively, "Defendants").

## **INTRODUCTION**

1. State and federal courts across the country have historically made new civil lawsuits available to the press and public as the court received them. Judge Bobby Shepherd recently described this traditional access during oral arguments in *Courthouse News Serv. v. Gilmer*, a case involving the same issues as here: "There was a time when—and some in this room may remember it—when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately." Oral Argument, *Courthouse News Serv. v. Gilmer*, 48 F.4th 908 (8th Cir.) (No. 21-2632), Entry ID: 5147367.

2. In the transition from paper filing to e-filing, the federal courts and many state courts have maintained the tradition of on-receipt access, making complaints available to the press and public as they cross the virtual counter. Defendants have not.

3. Defendants restrict access to the e-filed civil complaints until court staff have finished a series of administrative steps commonly referred to as "processing." As a result, all newly e-filed civil complaints are effectively sealed upon receipt, with access commonly withheld for one to three days after filing.

4. The First Amendment to the United States Constitution provides the press and public with a qualified right of access to new civil complaints. Whether new civil

complaints are paper-filed or e-filed, this right of access attaches on receipt, when a new filing is delivered to, or deposited with, the clerk.

5.     Court policies and practices that restrict access to the new civil complaints are subject to constitutional scrutiny, with the court bearing the burden of showing that such policies and practices are essential to preserve an overriding governmental interest and narrowly tailored to serve that interest.

6.     Courthouse News has a First Amendment right of access to new civil complaints that attaches when they are received by ACCCP, MCCCP, and WCCCP (collectively, the "County Courts").  Such access is fundamental and essential to accurate and fair news reporting of civil court actions, and thus, vital to the public's ability to monitor the activities of the judicial branch of government.  Any unjustified delays in access result in unconstitutional restrictions of the press's and public's ability to perform that important role.

7.     When access to these new civil complaints is restricted, and they are withheld from the press and public, the news they contain grows stale.  The public is left unaware that a civil action has commenced and that a litigant has invoked the power of the judicial branch of government.  A delay of even one day means that by the time the complaint can be reported, the news of its filing has already been overtaken by the next day's news and is less likely to ever come to the public's attention.

8.     The restriction on, and resultant delays in, access imposed by Defendants result from their policies and practices of barring access to new e-filed civil complaints until after they have been administratively processed by court staff.  New civil complaints e-filed in

the County Courts are received into an electronic database where they reside—withheld from public view and effectively sealed—while they await manual processing by court staff.

9.      The clerks impose a no-access-before-process on the press and public, by requiring review and acceptance before making a filing publicly available.

10.      Without Defendants' no-access-before-processing policy, there would be no restriction and no delay.  The restriction on access is unnecessary, as demonstrated by the federal and state courts across the country—including this Court and other courts of common pleas in Ohio—that provide access to new civil complaints when they are received, before processing.  Defendants are capable of providing on-receipt access.  They have chosen not to.

11.      On June 3, 2025, Courthouse News sent individual letters to Russell, Peeples, and Smith requesting that they discard the restriction on access to new civil complaints and pointing to the many courts that provide access on receipt.  *See* June 3, 2025 letters (attached as **Exhibit A**).

12.      Courthouse News brings this action to challenge the legality of Defendants' policies and practices, to end the ongoing deprivation of the First Amendment right of access, and to seek declaratory and injunctive relief prohibiting Defendants from enforcing their no-access-before-process policy and practice that results in violations of Courthouse News' constitutional right of access to newly e-filed civil complaints.

## JURISDICTION AND VENUE

13.      Courthouse News' claims arise under the First and Fourteenth Amendments to the U.S. Constitution and the Civil Rights Act, Title 42 U.S.C. §§ 1983, *et seq.*

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief).

14.     Defendants are subject to personal jurisdiction in this District.

15.     Venue is appropriate in this district under 28 U.S.C. § 1391(b) and (c) because ACCCP resides in this jurisdiction and all Defendants are residents of Ohio, and because Defendants are public officials who are employed in, perform their duties in, and reside in Ohio.

### THE PARTIES

16.     Courthouse News is a nationwide news service founded more than 30 years ago out of a belief that a great deal of civil litigation news went unreported by traditional news media.  Courthouse News has over 2,200 subscribers nationwide and approximately 240 employees.  Most of its employees are editors and reporters responsible for covering trial and appellate courts at the state and federal level in all 50 U.S. states.

17.     Defendant Russell, as the Clerk of Courts for the ACCCP, is being sued in her official capacity as the Clerk.  The Clerk is responsible for, among other things, the administration of court records at the ACCCP.

18.     Defendant Peeples, as the Clerk of Courts for the MCCCP, is being sued in his official capacity as the Clerk.  The Clerk is responsible for, among other things, the administration of court records at the MCCCP.

19.     Defendant Smith, as the Clerk of Courts for the WCCCP, is being sued in his official capacity as the Clerk.  The Clerk is responsible for, among other things, the administration of court records at the WCCCP.

20.     Defendants are sued in their official capacity only. Courthouse News seeks relief against Defendants as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

21.     Defendants and the clerks acting under their direction and supervision are directly involved with and/or responsible for the delayed access to new civil complaints experienced by Courthouse News and other members of the press. Such acts reflect the official policy and practice of Defendants' office and the County Courts as a whole.

22.     Defendants' actions, as alleged in this Complaint, are under the color of Ohio law and constitute state action for purposes of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

23.     On June 3, 2025, Courthouse News sent letters to Defendants requesting access when new civil complaints are received. However, Defendants have not removed the access restriction.

**Courthouse News Reports Daily News from Courts Throughout the Nation, Including Ohio**

24.     Courthouse News publishes a variety of news publications, including its *New Litigation Reports*, which contain original, staff-written summaries of significant new civil complaints. In Ohio, Courthouse News publishes four *New Litigation Reports*: the *Cleveland State Report*, the *Cleveland Federal Report*, the *Central Ohio Report*, and the *Cincinnati Report*.

25.     *New Litigation Reports* do not cover criminal or family law matters, nor do they include residential foreclosures or probate filings. Moreover, Courthouse News does not

seek to review or report on the small number of newly filed civil complaints that are statutorily confidential or accompanied by a motion to seal.

26.     Courthouse News also publishes the *Daily Brief*, which covers published appellate rulings in state and federal courts, including the appellate courts in Ohio, the U.S. Supreme Court and federal circuit courts, as well as significant rulings from the federal district courts.  Courthouse News also publishes a freely available website, www.courthousenews.com, featuring news reports and commentary, which is read by roughly 30,000 people every weekday. The website functions much like a print daily newspaper, featuring staff-written articles from across the nation that are posted throughout each day, and rotated on and off the page on a 24-hour news cycle.

27.     Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including:  *The Mercury News, ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR), NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today, U.S. News and World Report*, and the YouTube news channel.  American, Canadian, and New Zealand radio shows have also interviewed Courthouse News' reporters.

28.     Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices, and other news and publishing outlets such as:  The Associated Press, *The Atlanta Journal Constitution*, *The Boston Globe*,  *The Chicago Tribune*, *The Dallas Morning News*, *The Denver Post*, *Detroit Free Press*, Fox Entertainment Group, *The Guardian*, *Honolulu Civil Beat*, *Las Vegas Review Journal*, *Los Angeles Times*, NBC News, North Jersey Media Group, *Pacific Coast Business Times*, *Phoenix New Times*, *Portland Business Journal*, *San Antonio Express News, Seattle Times*, *St. Paul Business Journal*, *The Salt Lake Tribune*, *The San Jose Mercury News*, *Tampa Bay Business Journal*, *The Wall Street Journal* , *The Washington Post*, and Walt Disney Company.

29.     Academic subscribers include Arizona State University, Boston University, Baylor University, Columbia Journalism Investigations, Drake University Law Library, Santa Clara University, University of Colorado, University of Mississippi, University of Nebraska, University of New Mexico, University of North Carolina at Chapel Hill, University of Maryland – College of Journalism, University of Pennsylvania School of Law, University of South Florida, and Wake Forest University.

30.     In Ohio and other states, the *New Litigation Reports* cover civil complaints, focusing on those against business institutions and public entities.  Courthouse News reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions against individuals, unless the individual is famous or notorious.

31.     Courthouse News covers the Ohio state courts, like the County Courts, daily and emails reports to its subscribers nightly.  To prepare the *New Litigation Reports* and

identify new cases that may warrant a website article, Courthouse News' reporters review new non-confidential civil complaints filed with the court. Given the nature of news coverage and the Courthouse News publications, any restriction on the ability of a reporter to review new civil complaints necessarily impedes the reporting on factual and legal controversies for subscribers and readers.

**The Evolution of Filing Procedures & a Tradition of Access to Civil Complaints**

32.     In the paper era, both state and federal courts around the country gave the press access to new civil complaints when they were received.

33.     Courthouse News began its coverage of civil complaints, trials, and rulings in 1990. It initially focused on the U.S. District Court for the Central District of California, where Courthouse News reporters and other journalists could look through stacks of civil complaints handed to them by the intake clerk the day they were received.

34.     As Courthouse News expanded to large courts throughout the United States, its reporters found a common tradition. In those courts, Courthouse News arrived to find existing procedures under which the clerks were providing the press corps with access to new civil complaints when they were received.

35.     As Courthouse News continued to grow, its coverage extended to state and federal courts in every region of the United States, starting with major metropolitan areas, then gradually into less populous areas. Courthouse News now has reporters and editors covering state and federal trial and appellate courts across all 50 states. In every corner of the country to which Courthouse News turned, it found courts had existing procedures in place that provided

the press with access to civil complaints, then filed in paper form, as soon as they were received across the counter.

36. When Courthouse News began covering Ohio courts in 2003, it experienced this nationwide tradition of on-receipt access, including at the Northern and Southern Districts of Ohio and the big state courts in Ohio, including Franklin County Court of Common Pleas, Cuyahoga County Common Pleas Court, and Hamilton County Court of Common Pleas.

**Delays in Access to E-Filed Civil Complaints**

37. Today, nearly all federal district courts and many state courts provide access to newly e-filed complaints on receipt and before clerical processing.

38. Processing new complaints is not the problem. All e-filing courts must conduct some administrative processing of new complaints. Defendants are capable of providing on-receipt access to new civil complaints, yet they do not. Instead, Defendants have adopted and implemented a policy that restricts access until processing is complete.

39. Defendants' no-access-before-process policy requires that all newly e-filed civil complaints be withheld—effectively sealed—until after Defendants' staff members have completed their clerical tasks tied to processing such complaints. As a direct result, Courthouse News, along with other members of the press and the public, consistently experience access restrictions applied to the new civil complaints filed with the County Courts. For example, for the period January 1, 2025, to March 13, 2025, Courthouse News' tracking shows that ACCCP withheld roughly forty percent of new civil complaints for one to three days, and sometimes longer.

40.     Prior to restricting press and public access to court documents, a judge, not a Clerk of Courts, must "state findings or conclusions which justify nondisclosure to the public." *See Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176 (6th Cir. 1983).

41.     Defendants are not permitted to make judicial decisions, rulings, or findings and are, therefore, not capable of making new civil complaints confidential or sealing them.  By restricting access to filings prior to processing, Defendants are sealing a document from public viewing without prior court order.

42.     Court rules require specific conditions for documents being filed under seal.  *See e.g.*, Athens County Common Pleas Court Administrative Order, Electronic Filing of Court Documents, § IV(K)(2)(g) (excerpt attached as **Exhibit B**); Warren County Common Pleas Local Rules, General Division, Local Rule 3.06 (attached as **Exhibit C**).  A judge must approve a party's motion to file under seal prior to filing.  *Id*.  Sealed documents are filed using the e-file system, which is capable of categorizing them as confidential immediately upon filing.

43.     ACCCP and MCCCP's e-filing systems are provided by CourtView, the same software used in Butler County Court of Common Pleas, which provides on-receipt access by auto-accepting new civil complaints.  WCCCP uses the Benchmark platform provided by Pioneer Technology Group, which was acquired by Catalis.  Regardless of the software a court chooses to employ, all e-filing systems share basic characteristics common to all e-filing systems.  Before the filer can electronically submit a complaint to a clerk of court, the filer must enter basic case information and complete any other submission requirements the court specifies. The system can sort public case and subcase types from any non-public case types.  Accordingly, the e-filing software systems do the job of the intake clerk.  There is no reason that new civil

complaints need to be withheld from public view while they sit in a database waiting for a clerk to complete the post-filing "Clerk Review" and acceptance process.

44.     Despite the safeguards already in place to protect sealed and non-public filings, Defendants still maintain a no-access-before-process policy that restricts access to *all* e-filed civil complaints.  Non-confidential civil complaints are withheld from press and public access without a motion by the filing party, without prior court order, and without sufficient justification to satisfy constitutional scrutiny.

45.     Processing takes time and Defendants' no-access-before-process policy, in effect, seals new civil complaints inside the database where they are received while they wait for clerk processing.  As a result, new court matters are restricted from press and public access until after their news value has diminished.

46.     Because the County Courts already have mechanisms in place to protect confidential filings from public viewing, Defendants' no-access-before-process policy unjustifiably restricts Courthouse News' First Amendment right of access to new civil complaints in such a way that it cannot survive constitutional scrutiny.

47.     Defendants are capable of providing on-receipt access to new civil complaints but have refused.

### The First Amendment Right of Access Attaches to Civil Complaints When the Court Receives Them

48.     A right of access grounded in the First Amendment applies to non-confidential civil complaints.

12

49.     Analysis of a right of access claim involves a two-part test:  (1) whether a right of access attaches, and (2) if the right attaches, whether suppression of that right serves an overriding interest and is narrowly tailored.  *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 705 (6th Cir. 2002); *see also Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press Enterprise II*"); *see also U.S. v. Miami Univ.*, 294 F.3d 797, 821 (6th Cir. 2002); *See, e.g.*, *Courthouse News Serv. v. Planet*, 947 F.3d at 581, 589-97 (9th Cir. 2020) ("*Planet III*") (discussing and applying two-step process established by *Press-Enterprise II*).

50.     Following *Press Enterprise II*, courts analyzing the first element—whether the right attaches—have applied the "experience and logic" test.  *See Press-Enterprise II*, 478 U.S. 1; *Miami Univ.*, 294 F.3d at 821.

51.     Historically, "courts have openly provided the press and general public with access to civil complaints." *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016); *Planet III*, 947 F.3d at 596.

52.     New civil complaints are a traditional source of news providing the first piece of information about legal battles, therefore, serving a "significant positive role" in our legal system.  The right to review new civil complaints "is an indispensable predicate to free expression about the workings of government." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785, 787 (9th Cir. 2014) ("*Planet I*"); *accord Courthouse News Service v. Schaefer*, 2 F.4th 318, 326 (4th Cir. 2021) (citing *Press-Enterprise II*, 478 U.S. at 8-10); *Courthouse News Serv. v. Gabel*, No. 2:21-cv-000132, 2021 U.S. Dist. LEXIS 224271, at *24 (D. Vt. Nov. 19, 2021) (recognizing "the need for federal courts to have a measure of accountability and for the public to have confidence in the administration of justice") (appeal filed) (citations omitted) (internal

quotation marks omitted); *Courthouse News Serv. v. New Mexico Admin. Office of the Cts.*, 566 F. Supp. 3d 1121, 1161 (D.N.M. 2021) (quoting *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 605-06 (1982)) (recognizing that public access "plays a particularly significant role in the functioning of the judicial process and the government as a whole.")

53.     Applying the history and logic test, courts across the nation have recognized the existence of a qualified First Amendment right of access that attaches to non-confidential civil complaints upon their receipt by a court.  *See Press-Enterprise II*, 478 U.S. 1; *Miami Univ.*, 294 F.3d at 821.  *See also Planet III*, 947 F.3d at 591 ("Both sides before us agree that experience and logic support a public right of access to newly filed civil complaints"); *Bernstein*, 814 F.3d at 141 ("Experience and logic both support access" to civil complaints); *Courthouse News Serv. v. New Mexico Admin. Off. of the Cts.*, 53 F.4th 1245, 1262 (10th Cir. 2022) ("[T]he First Amendment right of access attaches to complaints when the court receives them, regardless of the technical terms and clerical processes used by the court."); *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 557-59 (E.D. Va. 2020) ("[T]he Court finds that the experience and logic test is satisfied and finds that the public and press enjoy a qualified First Amendment right of access to newly-filed civil complaint."); *Gabel*, 2021 U.S. Dist. LEXIS 224271, at *34-35 ("A qualified First Amendment right of access attaches when a complaint is electronically filed.").

54.     A right of access is also "implicit in the guarantees of the First Amendment[.]"  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980).  It is also "well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'"  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citing *Hartford Courant Co. v. Pellegrino*, 380

F.3d 83, 91 (2d Cir. 2004)); *see also Brown & Williamson*, 710 F.2d at 1177 (The resolution of private disputes frequently involves issues and remedies affecting third parties or the general public.  The community catharsis, which can only occur if the public can watch and participate, is also necessary in civil cases.  Civil cases frequently involve issues crucial to the public—for example, discrimination, voting rights, antitrust issues, government regulation, bankruptcy).

55.     Where the qualified First Amendment right of access attaches to a particular court process or document, as it does with new civil complaints, the right attaches upon the court's receipt of the document, and the press and public generally have a right of contemporaneous access.  *See, e.g.*, *New Mexico Admin. Off. of the Cts.*, 53 F.4th at 1269 ("[A] necessary corollary of the right to access is a right to timely access."); *Planet III*, 947 F.3d at 588, 591 (holding the qualified right of access to newly filed civil actions attaches when the lawsuit is filed, *i.e.*, when it is received by the court); *Courthouse News Serv. v. Jackson*, No. H-09-1844, 2009 U.S. Dist. LEXIS 62300, at *11 (S.D. Tex. July 20, 2009) ("In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous.") (citation omitted); *Courthouse News Serv. v. Tingling*, No. 16 Civ. 8742, 2016 U.S. Dist. LEXIS 185185, at *1-2 (S.D.N.Y. Dec. 16, 2016); *Schaefer*, 440 F. Supp. 3d at 559 (the public and press have a "contemporaneous right of access" to newly filed civil actions—meaning "on the same day as filing, insofar as practicable.")

56.     As recited above, Judge Bobby Shepherd said from the Eighth Circuit bench:  "There was a time when—and some in this room may remember it—when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."  During the same hearing in 2022, Judge Ralph R. Erickson,

addressing government counsel, added:  "What we're saying is that, oh, for about 230 years, you can walk into a Missouri courthouse, into the clerk's office, and say, 'Hey, can I see what's been filed today?'  And now all of a sudden you can't, right?"

### The Burden of Justifying Any Restriction on the Right of Access Falls on Defendants

57.     Turning to the second analytical step of a claim alleging a violation of the First Amendment right of access, after the court determines the right of access attaches to a particular record or proceeding, a presumption of access arises that may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440 F. Supp. 3d at 559-60.  Here, Defendants' policies are not essential to preserve higher values and are not narrowly tailored.

58.     Because the qualified First Amendment right of access attaches to new civil complaints on receipt, a presumption of openness arises at that time.  Any delays in access due to Defendants' no-access-before-process policy must serve an overriding interest based on findings that "closure is essential to preserve higher values and is narrowly tailored to serve those interests."  *Ashcroft*, 303 F.3d at 709 (citing *Press-Enterprise II*, 478 U.S. at 13); *accord Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (citing as an example *Press-Enterprise Co. v. Sup. Ct.*, 464 U.S. 501 (1984) ("*Press-Enterprise I*")); *Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440 F. Supp. 3d at 559-60.

59.     Defendants cannot justify their practice under constitutional scrutiny because it does not advance an overriding interest and is not narrowly tailored to serve any such interest.

60.     Defendants' no-access-before-process policy—which prohibits access to all electronically submitted documents until after Defendants' clerical review process is complete—is the sort of "blanket prohibition on the disclosure of records" that "implicates the First Amendment." *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 505 (1st Cir. 1989). "A ban on reporting news just at the time the audience would be most receptive would be effectively equivalent to a deliberate statutory scheme of censorship." *Planet III*, 947 F.3d at 594.

61.     Defendants' no-access-before-process policy, which extends to all e-filed civil complaints, is overbroad and not narrowly tailored because it restricts access to all non-confidential documents by effectively sealing them until after clerk processing.

**Alternatives Providing Access on Receipt Available to Defendants**

62.     Compared to the paper era, providing timely access in an e-filing court is even easier.  An e-filed petition is simply a .PDF document that can be downloaded and viewed. Nothing prevents a reporter from reviewing a new petition before it is processed by a clerk; nothing prevents a clerk from processing a petition at the very moment members of the press or public are reading it; and nothing prevents a clerk from processing a petition after review by the press or public, when the clerk's schedule permits.

63.     Moreover, courts can automatically segregate confidential filings based on designations made by the filer in the e-filing interface.  Online filings often require an acknowledgement from the filer that he must comply with redaction rules.  *See e.g.*, Sup.R. 45 (D)(3) ("The responsibility for omitting personal identifiers from a case document submitted to a court or filed with a Clerk of Court pursuant to division (D)(1) of this rule shall rest solely with the party.  The court or Clerk is ***not required*** to review the case document to confirm that the

17

party has omitted personal identifiers, and ***shall not refuse to accept or file*** the document on that basis.") (emphasis added).

64. In addition, courts can take a variety of steps tailored towards safeguarding confidential filings or information without overburdening the First Amendment by restricting access to *every* non-confidential civil complaint. For instance, courts can automatically segregate confidential filings based on designations made by the filer in the e-filing interface. They can also require e-filers to select "confidential" or "public" from the e-filing interface when submitting their documents, or post warnings on the e-filing interface to clarify what designations should be made for particularly sensitive filings. Also, even though courts typically put the onus on filers to redact personal information, many courts also require filers to check a box in the e-filing interface confirming that social security numbers, financial account numbers, or other private information has been redacted, which is what the federal courts require.

65. As was the case in the paper world, access in e-filing courts is delayed only if courts withhold new civil actions until after court staff complete administrative processing. Because most courts do not complete these clerical tasks for all of the day's new civil actions on the day of filing, the result of a no-access-before-process policy is to prevent the press from reviewing the contents of a substantial number of filings until at least the day after filing, at which point the information is old news and less likely to capture the public's attention.

66. Processing new petitions is not the problem and is not a condition precedent to public access. All e-filing courts must conduct some kind of administrative

processing of new complaints. The problem arises when a court withholds new civil complaints from the press and public until after processing is complete.

67. Courts that provide access as e-filed complaints are received, regardless of whether court staff have completed clerical processing, include the overwhelming majority of federal district courts, including this Court, in addition to state courts in Alabama, Arizona, California (all mandatory e-filing courts covering 85% of the state's population), Connecticut, Florida, Georgia (courts in Atlanta metropolitan area), Hawaii, Iowa, Kansas, Maryland, Missouri, New Mexico, Nevada (in the state's biggest court in Las Vegas), New York, Ohio (Cuyahoga County Common Pleas Court, Butler County Common Pleas Court, Franklin County Common Pleas Court, Montgomery County Common Pleas Court, Lucas County Common Pleas Court and Summit County Common Pleas Court), Oregon, Texas (Austin, Dallas, El Paso and seven others), Utah, and Vermont.

68. The state courts use vendor software and homegrown software to put those access alternatives in place. The vendors include CourtView (used by Butler County Common Pleas Court, as well as ACCCP and MCCCP in Ohio), Tybera, Tyler Technologies, Journal Technologies, Granicus, Mapsys (used by Franklin County Common Pleas Court and Lucas County Common Pleas Court), OLIS, ProWare (used by Cuyahoga County Common Pleas Court), and homegrown software is used in California, Connecticut, Hawaii, Iowa, Missouri, New Mexico, Montgomery County Common Pleas Court, Summit County Common Pleas Court, and New York. The federal courts use PACER to provide on-receipt access to new federal complaints.

69. The public access gateways are on courthouse terminals and court websites. Access through a court's website is often controlled by requirements that include application for access, approval, agreement to terms of use, username, password, and the ability to revoke access if the terms of use are not followed, plus a subscription fee. Some courts provide on-receipt access to the public without such conditions, including the state courts of New York which have been providing on-receipt access to new civil complaints through court websites since 2017. The choice lies with the individual court.

70. In the recent case of *Courthouse News Service v. O'Shaughnessy*, Case No. 22-02471, the United States District Court for the Southern District of Ohio issued an injunction requiring the Franklin County Clerk to provide same day access to newly filed civil complaints. Relying on Tybera software, the Clerk complied with the injunction within two months by putting in place a review queue that gives on-receipt access to new civil complaints. The clerk's office continues to review filer entries and process the new civil complaints—after public access has been provided.

71. Courts, like those identified above, that do not withhold public access for processing allow new civil actions to be read and reported on when they are received by the court and when the new action is still newsworthy and capable of commanding public attention.

72. Despite Courthouse News' request for access upon receipt with an explanation of how other courts throughout the country provide on-receipt access, Defendants continue to impose their no-access-before-process policy, thereby restricting Courthouse News' qualified First Amendment right of access to new civil complaints.

73.     Injunctive relief will not require this Court's ongoing enforcement or any "major continuing intrusion . . . into the daily conduct of state proceedings," as has been demonstrated by the Vermont state court administrator in *Gabel*, the New York County Clerk in *Tingling* and the Franklin County Court of Common Pleas Clerk in *O'Shaughnessy* after injunctive orders required them to cease enforcing their no-access-before-process policies.

## COUNT ONE
### Violations of Amendments 1 and 14 of the U.S. Constitution, and 42 U.S.C. § 1983

74.     Courthouse News incorporates herein the allegations of Paragraphs 1-73 above.

75.     Courthouse News has a qualified First Amendment right of access to new, non-confidential civil complaints because such filings have historically been open to the press and public, and access to such complaints plays a significant role in ensuring that the public is aware that a civil dispute has arisen, and the state power has been invoked.

76.     The presumption of access to new civil complaints arises when they are received by the Defendants.

77.     Defendants' no-access-before-process policy withholds new civil complaints until after processing is complete, thereby restricting access after the right of access has already attached.  Thus, Defendants' policy restricts Courthouse News' access to new civil complaints in violation of its First Amendment right of access.

78.     Defendants must show "that denial [of access] is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest."  *Detroit Free Press*, 303 F.3d at 705 (quoting *Globe Newspaper*, 457 U.S. at 607).

79.     Defendants cannot satisfy this level of constitutional scrutiny.  There exists no compelling reason to justify delaying on-receipt access to new complaints, as federal and state courts throughout the country do not impose such delays on access, and Defendants are capable of providing on-receipt access to newly e-filed complaints.

80.     Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendants' unconstitutional actions and will continue to suffer irreparable harm as a result of Defendants' violation of its First Amendment rights.  Courthouse News is therefore entitled to a permanent injunction and declaratory judgment to prevent further deprivation of its constitutional rights and, consequently, the rights of its subscribers.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff Courthouse News Service respectfully prays for judgment as follows:

A.     A declaration that Courthouse News has a qualified First Amendment right of access to new, electronically submitted, non-confidential civil complaints;

B.     A declaration that Defendants' policy and practice of withholding access to new, electronically submitted, non-confidential civil complaints until after processing—or after "Clerk Review" and acceptance—violates the First and Fourteenth Amendments to the United States Constitution;

C.    A preliminary and permanent injunction Defendants' policies and practices of withholding access to new, electronically submitted, non-confidential civil complaints until after processing;

D.    An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.    All other relief the Court deems just and proper.

Respectfully submitted,

/s/ John C. Greiner
John C. Greiner (0005551)
Griffin R. Reyelts (0102240)
FARUKI PLL
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202
Telephone:  (513) 632-0315
Fax:  (513) 632-0319
Email:  jgreiner@ficlaw.com
           greyelts@ficlaw.com

*Counsel for Plaintiff*
*Courthouse News Service*

4903-9119-4700.2